IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


MARK E. CAMPBELL,
ADC #144234                                                               PLAINTIFF

V.                               5:11CV00021 JLH/JTR

GRANT HARRIS, Former Warden,
Arkansas Department of Correction, et al.                   DEFENDANTS


## ORDER

### I. Introduction

On July 22, 2010, Plaintiff, Mark E. Campbell, was stabbed by inmate Souther

while both men were in the Varner Unit Dining Hall.  In this § 1983 action, Plaintiff

alleges that Defendants failed to protect him from that attack.[1]  *See* docket entries #2,

#7, and #8.

On June 15, 2011, Plaintiff filed his first Motion to Compel, which sought to

require Defendants to respond to certain Interrogatories and Requests for Production.

*See* docket entry #31.   On June 29, 2011, Defendants filed their Response in

---

[1] Specifically, Plaintiff alleges that Defendants: (1) improperly returned him to general population after he warned them that members of the Aryan nation had threatened to kill or harm him; (2) inadequately staffed the dining hall where he was attacked; and (3) wrongfully allowed Souther, who allegedly is a member of the Aryan nation, to bring a shank through the metal detectors and into the dining hall.

opposition to the Motion to Compel.  *See* docket entry #34.

On July 22, 2011, the Court entered an Order that  granted, in part, and denied, in part, Plaintiff's Motion to Compel.  *See* docket entry #36.  The Court held in abeyance its rulings on Requests for Production 2, 4, 5, 8, 12, 15, and 18 until it received a sealed Supplemental Response from Defendants which explained the specific security concerns that allegedly prevented them from releasing the information sought in Plaintiff's discovery papers.  *Id.*

After Defendants timely filed their sealed Supplemental Response (*see* docket entry #39), Plaintiff filed a Second Motion to Compel.  *See* docket entry #40. Defendants then filed a Motion for an Extension of Time to Complete Discovery and a Motion to Depose Plaintiff.  *See* docket entries #47 and #48.

After carefully reviewing Defendants' Supplemental Response to Plaintiff's written discovery, the Court concludes that Defendants have engaged in a shell game aimed at hiding or obfuscating many of the relevant facts surrounding Plaintiff's failure to protect claim.  Apart from frustrating the purpose of discovery, it has required the Court to waste considerable effort addressing several phantom discovery disputes, which were initially raised but later abandoned by Defendants' counsel.  In the future, Defendants' counsel should conduct discovery in the efficient and straightforward manner contemplated by the Federal Rules of Civil Procedure or risk

the imposition of sanctions.

## I.  Defendants' Sealed Supplemental Response to
## Plaintiff's First Motion to Compel

**A.  Request for Production 2**

Defendants initially objected to providing the name of the prison officer who decided the order in which inmates were called into the dining hall on July 22, 2010. The Court's July 22, 2011 Order required Defendants to explain the specific security concerns that prevented them from giving that information to Plaintiff.  *See* docket entry #36.

In their sealed Supplemental Response, Defendants now state that they have *no objections* to letting Plaintiff know that Lieutenant Boultinghouse was the shift supervisor who determined the order in which inmates went to the dining hall on July 22, 2010. *See* docket entry #39.  This conduct strongly suggests that, after Defendants learned the Court would require them to explain their position, they promptly abandoned it because they realized it was not defensible.

**B.  Request for Production 4**

Defendants also objected to allowing Plaintiff to see any video of the dining hall and the metal detector area on the ground that it would compromise security. The Court directed Defendants to file (under seal) the video recordings of the dining hall and metal detector areas for July 22, 2010, and to explain the specific security

concerns that prevent Plaintiff from viewing all or part of those recordings.  *See* docket entry #36.

In their Supplemental Response, Defendants now state that they do *not* have any video recordings because there were no security cameras in the dining hall area when the incident occurred.  *See* docket entry #39.  Of course, the issue of whether the video existed should have been thoroughly investigated by Defendants' attorney *before* she responded to Plaintiff's initial discovery request in May of 2011.  By failing to discharge this responsibility, Defendants' attorney has required the Court to waste time by dealing with a matter that is *not at issue.*

Because no video exists, Plaintiff's Motion to Compel is denied as to Request for Production 4.

Defendants also argue that, in general, they should not be required to let prisoners know, during discovery, whether they possess video recordings of an incident.  *See* docket entry #39.  Defendants contend that, by admitting they do *not* have a requested video, prisoners will be alerted that no security cameras are in a particular part of a prison.

The Court has previously rejected this argument in *Boyle v. Lay;* 5:11CV00014 JMM/JTR (docket entry #46).  Furthermore, because Defendants admit that security camera have now been installed in the dining hall area, their argument has *absolutely*

*no application in this case*. Finally, Defendants argument overlooks two well known facts:   (1) prisoners have eyes; and (2) they use them to identify the locations of *all cameras* and camera angles.  It seems highly unlikely that prisoners in the Varner Unit do not already know the areas that are covered by cameras and the areas that are not covered by cameras.

## C.    Requests for Production 5 and 8

The Court ordered Defendants to produce (under seal) copies of all documents prepared during Internal Affairs Investigator Christopher Coody's and Captain Williams's separate investigations of the July 22, 2010 incident, and to explain the specific security concerns that prevent releasing all or portions of those documents to Plaintiff.   *See* docket entry #36.

Defendants have produced to the Court a variety of sealed documents and an audio recording of Coody's post-attack interviews with Souther and Plaintiff.  *See* docket entry #39.

Defendants make the conclusory argument that releasing *all* of the requested materials to Plaintiff will create a security risk.  Contrary to the Court's instructions, they make no attempt to address how *each* specific document and taped interview creates *specific security concerns*. Additionally, the audio tape of Plaintiff's interview with Coody makes it clear that Plaintiff *already knows* much, if not all, of the

information that Defendants fear releasing to him.  Similarly, several of the sealed

documents were completed or signed by Plaintiff!  Given that fact, it is inconceivable

that he is not already aware of their allegedly "secret" contents.

Finally, Defendants have disregarded the Court's unambiguous instructions to:

(1) explain "whether redacting specific information from those documents would

alleviate any legitimate security concerns"; and (2) clarify "whether Defendants intend

to use all or part of any such document in a dispositive motion or at trial."  *See* docket

entry #36 at 8.

**Within seven days of the entry of this Order, Defendants must file a Sealed**

**Second Supplemental Response that: (1) addresses *each* document and taped**

**interview *separately*; (2) specifies, by sentence (on documents) or time stamp (on**

**taped interviews), each security risk created, and explains the nature of each**

**such security risk; (3) explains why redacting portions of the document or taped**

**interview will not alleviate each of those security concerns; and (4) clarifies**

**whether Defendants intend to use all or part of each document or taped interview**

**in a dispositive motion or at trial.[2]  Counsel's failure to comply with this Order**

**may result in the imposition of sanctions under Fed. R. Civ. P. 37(b)(2)(A).**

---

[2]  If Defendants intend to rely on any of this material to support a Motion for
Summary Judgment or at trial, Plaintiff clearly is entitled to review the material in
preparing his Response to the Motion for Summary Judgment or in preparing for trial.

D.     **Request for Production 12**

Defendants objected to producing copies of rules, regulations, or policies regarding the staffing ratio in the dining hall area, on the ground it would create security concerns.  In its July 22 Order, the Court required Defendants to: (1) produce, under seal, all of the requested documents; and (2) explain the specific security concerns that prevent releasing all or portions of those documents to Plaintiff.  *See* docket entry #36.

In Response to that Order, Defendants now state that the ADC does *not* have any such rules, regulations, or policies responsive to Request for Production 12.  *See* docket entry #39. As in the case of the nonexistent video, this is something Defendants should have disclosed to Plaintiff in their initial response to his written discovery.  Thus, the Court has again been required to waste time addressing a non-issue.

Because the requested documents do not exist, Plaintiff's Motion to Compel is denied as to Request for Production 12.

E.     **Request for Production 15**

The Court ordered Defendants to produce (under seal) photographs of the shank Souther used to stab Plaintiff, and to explain the specific security concerns that prevent releasing those photographs to Plaintiff.  *See* docket entry #36.

-7-

Defendants have produced to the Court a photograph of the shank. *See* docket entry #39. The Court agrees with Defendants that Plaintiff, as well as other prisoners, potentially could use the photograph as a "blue print" to make a weapon. Thus, Plaintiff's Motion to Compel is denied as to this discovery request.

Defendants further explain that they cannot, at this time, locate the actual shank used by Souther. *See* docket entry #39. Defendants believe that the shank may have been given to the Arkansas State Police or the local prosecutor's office, and they are trying to locate it.

Defendants' counsel is *ordered* to investigate who currently has possession of the shank. If the shank is located, it must be preserved so that it will be available at trial. If it cannot be located, Defendants counsel must file a sealed Response explaining the chain of custody for the shank (including the names of all persons having possession of it); how the shank was lost; and who was responsible for losing it.

Defendants' counsel is also *ordered* to preserve all photographs of the shank, so that they can be available for use by Plaintiff if this case proceeds to trial. If the shank cannot be located, Defendants' counsel must file, with the Court, an Affidavit signed by someone who once had possession of the shank, which describes: (1) the size of the blade (length, width, and thickness); (2) the length of the handle; and (3)

the material from which it was  made.

**F.      Request for Production 18**

Defendant objected to providing Plaintiff with all documents and photographs taken during the July 2009 investigation into Plaintiff's gang affiliation.   In the July 22, 2011 Order (docket entry #36 at 14-15), the Court required Defendants to file a Sealed Supplemental Response that: (1) included   "*documents* regarding the *July 2009"* investigation into *"Plaintiff's* gang affiliation"; (2) explained the specific security concerns that prevent releasing all or portions of those *documents* to Plaintiff; and (3) clarified whether redacting specific portions of those documents would alleviate any legitimate security concerns.  *Id.* (emphasis added).

Defendants' Sealed Supplemental Response contains:  (1) a July  2009 "Self Admission As A Security Threat Group Member" form that includes  several photographs of Plaintiff's tattoos; (2) an August 2009 "Personal Characteristics" form that includes other blurry, thumbnail sized photographs of Plaintiff's tattoos; and (3) Inmate Souther's December 22, 2010 "Self Admission As A Security Threat Group Member" form.  *See* docket entry #39.

Inmate Souther's December 2010 form is *not* responsive to Plaintiff's discovery request or the Court's July 22, 2010 Order.  Similarly, Defendants have devoted their Sealed Supplemental Response to explaining why Plaintiff should not have

*photographs* of his tattoos.  At this early stage in the case, the Court has *already ruled* that Plaintiff should not be allowed to have photographs of his tattoos.  However, if this case proceeds to trial, those photographs will clearly be relevant, and the Court will require Defendants to make copies of those photographs available to Plaintiff's attorney.

Finally, as to the other documents within the scope of Request for Production 18, Defendants' have ignored the Court's unambiguous instructions to explain why each such documents should not be released to Plaintiff.[3]

**Accordingly, Defendants must, within seven days of the entry of this Order, provide Plaintiff with copies of his July  2009 "Self Admission As A Security Threat Group Member" form and his August 2009 "Personal Characteristics" form, with the photographs contained in those documents redacted.**

### III.   Plaintiff's Second Motion to Compel

In his May 2011 discovery requests, Plaintiff asked for copies of his prison medical and mental health records.  *See* docket entry #34.  In its July 22, 2011 Order, the Court ruled that Plaintiff must be allowed access to – but not copies of – those records. *See* docket entry #36.

---

[3] This omission, coupled with the unexplained inclusion of Souther's December 2010 form, causes the Court to question whether Defendants' counsel read pages 14 and 15 of the July 22, 2011 Order.

On August 9, 2011, Plaintiff filed a Second Motion to Compel arguing, among other things, that Defendants have *not* provided him with access to his records.[4]  *See* docket entry #40.  In their Response, Defendants state that Plaintiff can obtain access to his records by filing a written request with the prison infirmary.  *See* docket entry #45.  Furthermore, Defendants' counsel states that, if any such request is denied, Plaintiff should  "contact her" and "report the incident so that it can be remedied." *Id.* at 2.

Upon receipt of the July 22, 2011 Order, defense counsel should have immediately notified the appropriate ADC employees that the Court had ruled Plaintiff should be allowed "to review his prison medical records and make any handwritten notes he deems necessary."  *See* docket entry #36 at 10.  Apparently, Defendants are still denying Plaintiff access to his medical records.

**Plaintiff must immediately be allowed access to his medical records.  In the future, if he needs additional access to these records, he need only file a written request with the prison infirmary, which must promptly provide Plaintiff with access to those documents.**

Plaintiff should have been allowed access to his medical records four months

---

[4] Plaintiff also asked the Court to reconsider its rulings on Requests for Production 9 and 20.  However, Plaintiff has failed to set forth a sufficient for reason for the Court to do so.

ago, shortly after he made this discovery request.[5]  Rather than allowing Plaintiff access to his medical record and providing him with other relevant information he was entitled to receive in response to his written discovery, defense counsel has turned discovery into an exercise in "pulling teeth."

Accordingly, the Court concludes that Plaintiff is now in need of legal representation.  By separate Order, counsel will be appointed.  Finally, Plaintiff's Second Motion to Compel is granted, only as to his request for access to his medical records.

Defense counsel is reminded of the obligation to act in good faith in resolving any future discovery disputes with Plaintiff's counsel, as contemplated by Fed. R. Civ. P. 37(a)(1) and 37(a)(5)(A) and Local Rule 7.2(g).

## IV.  Defendant's Motion for an Extension of Time

Defendants have filed a Motion seeking a thirty-day extension of the discovery deadline.  *See* docket entry #47.  It is clear that Plaintiff's counsel will need more than thirty days to complete discovery in this case.  The Court will impose new discovery and dispositive motion deadlines in its Order appointing counsel for Plaintiff.

---

[5]  Absent a showing of need, a prisoner is not entitled to have *copies* of his medical records.  However, the law is clear that, after requesting *access* to his relevant medical records in written discovery, a prisoner is entitled to review his medical records and take notes to begin preparing his case for trial.

## V. Defendants' Motion to Depose Plaintiff

Defendants have filed a Motion requesting permission to depose Plaintiff. *See* docket entry #48. The Court finds good cause for granting the Motion, pursuant to Fed. R. Civ. P. 30(a)(2)(B). Defendants *must* contact Plaintiff's counsel to arrange for a mutually convenient date for the deposition.

## VI. Conclusion

IT IS THEREFORE ORDERED THAT:

1.     Plaintiff's first Motion to Compel (docket entry #31) is GRANTED IN PART and DENIED IN PART as specified herein.

2.     Plaintiff's Second Motion to Compel (docket entry #40) is GRANTED, as specified herein.

3.     Defendants' Motion for an Extension of Time to Complete Discovery (docket entry #47) is GRANTED as modified herein.

4.     Defendants' Motion to Depose Plaintiff (docket entry #48) is a GRANTED as modified herein.


Dated this _6th_ day of October, 2011.


_____
UNITED STATES MAGISTRATE JUDGE