IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MARK E. CAMPBELL                                                        PLAINTIFF
ADC #144234

v.                               No. 5:11CV00021 JLH/JTR

GRANT HARRIS, Former Warden,
Arkansas Department of Correction, *et al*.                             DEFENDANTS

## OPINION AND ORDER

Mark E. Campbell is a prisoner in the Maximum Security Unit of the Arkansas Department of Correction ("ADC"). On July 22, 2010, he was stabbed by inmate Billy Souther while both men were in the satellite dining hall of the Varner Unit.

In February of 2011, Campbell commenced this section 1983 action alleging that the defendants failed to protect him from Souther's attack. Specifically, he contends that defendants: (1) Former Warden Grant Harris, Former Warden John Whalen, Former Deputy Warden Darryl Golden, and Classification Officer Revonna Walker improperly returned him to general population after he warned them that members of the White Aryan Resistance ("WAR") had threatened to kill or harm him; (2) Warden James Banks and Assistant Warden Curtis Meizner inadequately staffed the dining hall where he was attacked; (3) Cheryl Jones inadequately monitored the inmates in the dining hall; and (4) ADC Chief Deputy Director Larry May failed to take corrective action after reviewing Campbell's grievances about the attack.[1]

---

[1] The Court has previously dismissed all other claims and defendants. *See* Documents #9 and #13.

The defendants have filed a motion for summary judgment and a reply. Campbell, who is represented by appointed counsel, has filed a response and a sur-reply.[2] Additionally, Campbell has filed a motion for sanctions and a reply, to which the defendants have filed a response.

For the following reasons, the Court will grant the defendants' motion for summary judgment and deny Campbell's motion for sanctions.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

### A.  Exhaustion of Administrative Remedies

All of the defendants, except Jones, argue that they should be dismissed from this action without prejudice because Campbell failed to exhaust his administrative remedies against them. This argument is well taken.

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[2] The Court thanks Mr. Cooper and Mr. Purvis for their exemplary representation of Campbell. Their *pro bono* services were helpful to Campbell, as well as the Court, and are greatly appreciated.

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006). In *Jones*, the Court said, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211.

The PLRA requires that inmates fully and properly exhaust their administrative remedies as to each claim in the complaint prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90-91. Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility.

For an ADC inmate, full and proper exhaustion of administrative remedies requires that the inmate file an informal resolution form, file a grievance to the Warden (if the informal resolution attempt is unsuccessful), and appeal the denial of that grievance to the ADC Deputy/Assistant Director. *See* Document #78-1, Ex. A (ADC Adm. Dir. 09-01 § IV).

The provision of the ADC exhaustion policy at issue here states, "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed

by the ADC" and "[i]nmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." *Id.*, Ex. A at 4-5 (ADC Adm. Dir. 09–01 § IV(C)(4)). In addition, § IV(N) of ADC Admin. Dir. 09-01 states: "[i]nmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately." *Id.*, Ex. A at 16. Finally, the grievance forms themselves remind inmates that in the grievance they must state the "name of personnel involved." *Id.*, Ex. A at 17.

In this case, it is undisputed that grievance VSM 10-2902 is the only grievance that Campbell fully exhausted regarding the July 22, 2010 attack. In that grievance, Campbell alleged that:

> On July 22, 2010 at approximately at [sic] 4:15 pm I [M]ark Campbell was assaulted with a deadly weapon a homemade shank (ice pick) 5 ½ in. in [l]ength receiving (8) puncture wounds to the neck by inmate Billy Souther ADC #652343, [i]n the Satellite Dining hall while I was eating. This was a [g]ang related hit by a member of W.A.R. Security was fully aware of the threats in the past by members of W.A.R. [a]nd statements that I [had] written of being in fear of my [l]ife. These complaints were never [taken] [s]eriously by Security to protect me. [O]n July 22, 2010, there was one (1) prison official Sgt. Cheryl Jones maintaining & monitoring more than 60 inmates [c]oming into the southside Dining hall. Sgt. Jones failed to monitor how inmate Souther entered the [d]ining hall with a homemade shank made of metal. When all inmates are to go through the metal detector before entering [the] [d]ining hall. Therefore, security & Sgt. Jones [are] in violation of inmate M. Campbell's [c]ivil [r]ights under the 8th and 14th Amendment to the U.S. Const. of [c]ruel and unusual [p]unishment and [d]ue [p]rocess by not tak[ing] reasonable measure[s] to protect prisoners from assault by other inmates, and failure to act reasonably in response to danger. Security had knowledge of past threats towards Campbell, also failure to control tools or other items that can be used as weapons.

*See* Document #78, Ex. C.

The parties agree that VSM 10-2901 properly exhausts Campbell's claims against Jones. In contrast, May, Harris, Whalen, Meizner, Walker, Golden, and Banks argue that VSM 10-2901 does

not properly exhaust any claims against them because Campbell failed to name them specifically in that grievance as required by ADC Admin. Dir. 09-01. Campbell has advanced several arguments in an attempt to overcome that problem.

First, Campbell contends that he adequately complied with ADC Admin. Dir. 09-01 by referring to the defendants as "security." In support of that argument, Campbell cites *Wheeler v. Prince*, 318 F. Supp. 2d 767, 771 (E.D. Ark. 2004), where the district court held that a prisoner's grievance must include "as much relevant information about his claim, including the identity of those directly involved in the alleged deprivation, as the inmate reasonably can provide." Campbell explains that he was confined in administrative segregation immediately after the July 22, 2010 attack. Thus, according to Campbell, it was impossible for him to determine the defendants' identities so that he could specifically name them in VSM 10-2901.

This argument fails for two reasons. First, *Wheeler* was decided in 2004, which was three years before the Supreme Court handed down *Jones* in 2007. As previously discussed, in *Jones* the Supreme Court held that the PLRA requires a prisoner to comply with all of the exhaustion requirements of the incarcerating facility, including the prison's requirement that a grievance specifically name each defendant. *Jones*, 549 U.S. at 218-19.

Second, May, Whalen, Harris, Banks, Meizner, Golden, and Walker were the ADC Deputy Director, Wardens, Assistant Wardens, and a Classification Officer, respectively. If Campbell did not remember their names, he could have identified each of them by their proper titles, rather than making a vague reference to "security," which potentially could refer to a plethora of ADC employees. Similarly, Campbell could have provided more facts about the allegedly unknown individuals so that ADC grievance officers could have determined their identities. For instance, Campbell could have

referred to Whalen and Walker as the Warden and Classification Officer who returned me to general population in September of 2009; Harris and Golden as the Warden and Deputy Warden who ignored my September and October of 2009 letters about the decision to return me to general population; Banks and Meizner as the Warden and Assistant Warden who determined, in July of 2010, that one correctional officer was sufficient to monitor the satellite dining hall; and May as the Deputy ADC Director who denied my grievance appeals on certain dates. Simply making a generic reference to "security" did not provide sufficient information to allow ADC prison officials to identify to whom Campbell was referring so they could conduct an adequate investigation into his specific claims. *See Jones*, 549 U.S. at 219 (explaining that the purpose of the PLRA exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit"). Thus, Campbell did not properly exhaust his administrative remedies in accordance to the ADC Admin. Dir. 09-01.

Campbell also argues that he should not be required to comply with the specific terms of ADC Admin. Dir. 09-01 because he was never given a copy of that policy. *See* Document #84-2. However, as pointed out by the defendants, a copy of ADC Admin Dir. 09-01 was available in the Varner Unit library. *See* Document #87-3. Moreover, it is undisputed that, prior to July of 2010, Campbell had filed at least six grievances, so he was familiar with the specific requirements of the ADC Admin. Dir. 09-01. *Id.*

More importantly, it is undisputed that the grievance form Campbell used when completing VSM 10-2901 specifically reminded him to state the "name of personnel involved." *See* Document #78-3. Thus, Campbell cannot claim that he was unaware of the requirement that he name each defendant.

Finally, it is well settled that a prisoner's subjective and possibly incorrect understanding of the prison grievance process is irrelevant to a determination of whether there has been proper exhaustion. *See Hahn v. Armstrong,* 407 F. App'x 77, 79 (8th Cir. Jan. 18, 2011) (unpublished decision); *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). Thus, this argument has no merit.

In the alternative, Campbell argues that it he should not be required to comply with ADC Admin. Dir. 09-01 because prison officials also failed to comply with that policy. Specifically, Campbell contends that prison officials failed to note, on VSM 10-2902, the date his informal resolution was received and by whom; send him acknowledgment forms indicating when his grievance and appeals were received; and complete their final review of VSM 10-2902 within 76 days. *See* Document #78-1, Ex. A (ADC Admin Dir. 09-01 § IV (F)(3)-(4), (G)(5), and (G)(8)).

In *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005), the Eighth Circuit stated that:

> We have only excused inmates from complying with an institution's grievance procedures when officials have prevented prisoners from utilizing the procedures, *see Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001), or when officials themselves have failed to comply with the grievance procedures. *See Foulk v. Charrier*, 262 F.3d 687 (2001).

The statement regarding the prison officials' failure to comply with their own rules, however, was mere dicta. In *Gibson*, there was no allegation that prison officials failed to comply with their own exhaustion procedures. *Id.* Instead, an inmate alleged that prison personnel misinformed him about the exhaustion process. *Id.* In *Gibson* the above-quoted statement was a part of the explanation for the holding that the prisoner's subjective misunderstanding of the prison exhaustion process did not excuse his procedural default.

In *Foulk* (which was cited in *Gibson*), a Missouri inmate was unable to complete the exhaustion process because a prison official failed to respond to his informal resolution, and the prison's exhaustion policy did not allow the prisoner to proceed further without a response. *Foulk*, 262 F.3d at 698. An Arkansas prisoner could not prevail on such an argument because the ADC policy specifically allows prisoners, who do not receive a response to an informal resolution or grievance, to proceed to the next step of the process. *See* Document #78-1, Ex. A (ADC Admin. Dir. § IV(E)(11) and (F)(8)).

The alleged procedural errors committed by ADC prison officials in this case did not prevent Campbell from properly and fully exhausting his administrative remedies against each defendant, as required by ADC Admin. Dir. 09-01. In fact, the parties agree that Campbell fully and properly exhausted his administrative remedies against Jones. Campbell simply failed to name the remaining defendants specifically, as required by the ADC Admin. Dir. 09-01.

Thus, Harris, Whalen, Golden, Banks, Meizner, Walker, and May are dismissed without prejudice because Campbell failed to exhaust his administrative remedies against them.

**B.    Judgment as a Matter of Law on Campbell's Claim Against Jones**

The relevant facts regarding Campbell's failure to protect claim against Jones are largely undisputed. *See* Documents #78 and #84.

On July 22, 2010, Campbell was housed in general population. At that time, he did not have any prisoners on his enemy alert list, nor did he have any reasons to believe that Souther, who was his friend, might harm him.

Sometime that evening, Campbell and the other inmates in 4 barracks were called to the satellite dining hall to have dinner. All of the inmates walked through a metal detector before entering the dining hall. Jones was the only ADC guard assigned to work inside the dining hall.

Before 4 barracks finished eating their meal, the inmates in 1 barracks, which included Souther, were allowed to walk through the metal detector and enter the dining hall. After getting his tray, Souther approached Campbell from behind and cut him, eight times in the head and neck area, with a shank. Campbell fought back.

The parties dispute whether Jones was in the dining hall when the attack began. *See* Document #78-11, at 7-8; Document #85-10, at 4-5. However, they agree that soon after the attack started, Jones called for back-up and ordered both inmates to stop fighting. *See* Documents #78 and #84. The inmates complied with her order, and Souther dropped the shank to the floor. Both prisoners were handcuffed, and escorted to the infirmary, where Campbell received medical treatment for eight superficial wounds.[3] Meanwhile, an ADC guard took the shank used by Souther through the metal detector, and it did not set off the machine.

Being assaulted by other inmates is not "part of the penalty that criminal offenders pay for their offenses[.]" *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002).

Thus, to prevail on a failure to protect claim, a prisoner must prove that, objectively, there was a substantial risk of serious harm, and, subjectively, the defendants knew of and disregarded that

---

[3] Campbell did not receive stitches or staples for his injuries. Instead, the wounds were cleaned and bandaged, and did not require any further treatment. *See* Document #62, Ex. 39; Document #78-8, Ex. H at 14.

substantial risk of serious harm. *Young*, 508 F.3d at 872; *Lenz v. Wade*, 490 F.3d 991, 995-996 (8th Cir. 2007). As to the subjective component of the analysis, the Eighth Circuit has emphasized the prison official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Schoelch v. Mitchell,* 625 F.3d 1041, 1046 (8th Cir. 2010); *Lenz*, 490 F.3d at 995-996.

In this case, it is undisputed that Souther's attack was a surprise. *See Schoelch,* 625 F.3d at 1048 (affirming summary judgment where a prisoner was the victim of a "surprise attack" by another inmate). Campbell has failed to present any evidence indicating that Jones was subjectively aware of a substantial risk that Souther might attack him. *See Holden v. Hirner*, 663 F.3d 336, 341-42 (8th Cir. 2011).

Instead, Campbell's theory of recovery against Jones is that she temporarily left her post inside the dining hall, and thus, did not stop the attack sooner.[4] However, even if Jones temporarily left her post, the evidence shows, at most, that she was negligent, not that she was deliberately indifferent. *See Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (concluding that negligence, an even gross negligence, is insufficient to establish a failure to protect claim); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (explaining that "even gross negligence" is insufficient to establish a failure to protect claim); *Holden,* 663 F.3d at 341 (explaining, in a failure to protect case, that "deliberate indifference includes something more than negligence . . . it requires proof of a reckless

---

[4] In his complaints, Campbell alleges that the defendants, who have been dismissed due to a lack of exhaustion, failed to protect him from Souther's attack by returning him to general population after he reported that members of WAR might harm him; inadequately staffed the dining hall with only one guard; failed to properly maintain the metal detector through which Souther may have carried his shank; and improperly called 1 barracks and 4 barracks to eat in the dining hall at the same time. Importantly, the parties agree that Jones did not have any personal involvement in these alleged shortcomings.

disregard of the known risk"); *see also Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (explaining that a prison official's failure to alleviate a risk that he should have perceived, but did not, is insufficient to sustain a failure to protect claim).

Accordingly, Jones is entitled to judgment as a matter of law on Campbell's failure to protect claim. Thus, that claim is dismissed with prejudice.

## II. CAMPBELL'S MOTION FOR SANCTIONS

Campbell has filed a motion arguing that he is entitled to a spoilation instruction and monetary sanctions because the defendants failed to preserve footage from a security camera that may have been in the dining hall on July 22, 2010.[5]

To obtain a spoilation instruction or monetary sanctions, the moving party must demonstrate that the opposing party acted in bad faith when he failed to preserve the evidence, and the requesting party was prejudiced by that failure. *Koons v. Aventis Pharm.*, 367 F.3d 768, 780 (8th Cir. 2004); *Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 745-48 (8th Cir. 2004); *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588-89 (D. Minn. 2005).

Campbell's request for a spoilation instruction has been rendered moot by the Court's decision to grant the defendants' motion for summary judgment.

As to Campbell's request for monetary sanctions, there is no indication in the record that the defendants acted in bad faith when they failed to preserve any security camera footage that may have existed. Instead, it appears to have been an act of negligence or oversight. *See Stevenson*, 354 F.3d

---

[5] The parties disagree as to whether there was a security camera in the satellite dining hall on July 22, 2010. *See* Documents #86, #92, and #95. However, they agree that no footage from any such camera was preserved or ever viewed by prison officials. *Id*.

at 746 (explaining that "there must be a finding of intentional destruction indicating a desire to suppress the truth").

As to the prejudice element, the requested footage may have shown whether Jones was in the dining hall when Souther began to attack Campbell. However, as previously explained, even if Jones had temporarily left her post in the dining hall, that fact alone does not establish subjective deliberate indifference necessary to sustain a failure to protect claim. Moreover, as pointed out by the defendants, there were numerous inmates in the dining hall who could have testified as to whether Jones was at her post when the attack began. Thus, Campbell has not established that he was prejudiced by the defendants' alleged failure to preserve any security camera footage. Accordingly, Campbell's motion for sanctions is denied.

## CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. The defendants' motion for summary judgment (Document #76) is GRANTED.

2. Campbell's claims against Harris, Whalen, Golden, Banks, Meizner, Walker, and May are DISMISSED WITHOUT PREJUDICE.

3. Campbell's claim against Jones is DISMISSED WITH PREJUDICE.

4. Campbell's motion for sanctions (Document #85) is DENIED.

DATED this 3rd day of August, 2012.

J. LEON HOLMES  
UNITED STATES DISTRICT JUDGE